# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CEDAR COMMUNITIES AT STAUNTON I, LLC, D/B/A BIRCH GARDENS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>A PLACE FOR MOM, INC.,<br><br>Defendant. | Case No. 1:24-cv-09737<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, by and through undersigned counsel, brings this lawsuit on behalf of itself and others similarly situated. Plaintiff alleges the following based upon personal knowledge, investigation by counsel, and facts that are a matter of public record and, as to all other matters, upon information and belief:

## INTRODUCTION

1. This Complaint describes a deceptive scheme in which Defendant, in violation of the Lanham Act and the New York Deceptive Trade Practices Act, employs false and misleading advertising to lure in customers, thereby stealing prospective customers and leads from Plaintiff and other senior living communities, while also harming their business reputation and good will.

2. Defendant, A Place For Mom, Inc., is a web-based senior living placement and referral service claiming to help caregivers and families make informed choices about senior care living options for their loved ones. Plaintiff, Cedar Communities at Staunton I, LLC, d/b/a Birch Gardens, is a senior living community that has been harmed by Defendant's actions.

3. Defendant employs an aggressive marketing scheme in which it misleads families and caregivers seeking senior care options. Despite advertising free, impartial guidance, Defendant exclusively refers potential customers to senior living communities that pay it a commission, increasing care and rent costs while excluding high-quality options like Plaintiff, who decline to participate in its pay-to-play model. Even more egregiously, Defendant leverages the names of Plaintiff and other senior living communities in online search results to drive traffic to its own website, creating the illusion that these communities are part of its placement and referral network when they are not. When potential customers click on these listings, Defendant redirects them to its own representatives, who steer them toward contracted communities in Defendant's referral network. This not only diverts business away from Plaintiff and other communities, but also damages their reputation and good will, as consumers may falsely assume that the alternatives

Defendant suggests are superior. Plaintiff and similarly situated senior living communities suffer both financially and reputationally from Defendant's false advertising and deceptive practices, which undermine fair competition and consumer trust.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. Plaintiff's claims are based, in part, on violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

5. The Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's New York Deceptive Trade Practices Act claims.

6. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, in the aggregate; there are more than 100 members in the proposed class; and at least one class member is a citizen of a state different from Defendant.

7. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district. Defendant is subject to the court's personal jurisdiction in this judicial district with respect to this civil action, as Defendant transacts business, receives commissions from contracted communities in its network, and has substantial contacts in this judicial district. Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred here, including Defendant's false and misleading advertising and deceptive scheme, which were designed and emanated from this district.

## PARTIES

8. Plaintiff, Cedar Communities at Staunton I, LLC, d/b/a Birch Gardens, is a Virginia limited liability company with its principal office in the State of New York, where some of its

members are located and reside. Plaintiff will hereinafter be referred to as "Birch Gardens" or "Plaintiff." Birch Gardens' facility is located in Staunton, Virginia.

9.  Defendant, A Place For Mom, Inc., is a Delaware corporation with its principal place of business and headquarters located in New York, New York. Defendant will hereinafter be referred to as "A Place For Mom."

## FACTUAL ALLEGATIONS

I.  **A Place For Mom engages in false and misleading advertising.**

10.  A Place For Mom is a web-based senior living placement and referral service that claims to help caregivers and families navigate the complex process of selecting senior care living options. Families and caregivers often face overwhelming stress and anxiety when trying to choose the right senior care option for their loved one. A Place For Mom takes advantage of this by promising expert, unbiased guidance to ease this process, all at no cost.

11.  A Place For Mom's website and various social media platforms connect families with various senior living communities, including independent living, assisted living, memory care, and nursing homes. A Place For Mom claims to offer personalized guidance from experienced advisors who understand the unique needs of seniors and their families.[1] A Place For Mom touts that its database includes over 14,000 senior living communities across the nation, purportedly to ensure families can access the most suitable and geographically convenient options.[2]

12.  A Place For Mom's core advertising claim offers a comprehensive, unbiased, and no-cost referral and placement service for families seeking senior living options, stressing

---

[1] https://www.aplaceformom.com/eldercare-advisors, accessed November 11, 2024.
[2] https://www.aplaceformom.com/about/methodology, accessed November 11, 2024.

3

impartiality in its recommendations. The company emphasizes that "our recommendations [are] unbiased" and that "our interests are aligned to provide the best outcome for your family and help you make a confident decision."[3]

13.     However, these marketing claims are false and misleading. Rather than offering an unbiased assessment of the best options out of a full set of communities from which seniors and their families can choose, A Place For Mom only refers to communities that pay A Place For Mom a commission. Thus, a family member or caregiver seeking "unbiased" and "expert" advice or recommendations from A Place For Mom's website or social media platforms is shown listings of only those senior living communities that have contracted with A Place For Mom and pay referral commissions.

14.     The supposed "options" offered by A Place For Mom are vastly limited. Individuals seeking information from A Place For Mom are presented with offerings from fewer than half of the senior living communities available nationwide. A Place For Mom's network includes just over 14,000 communities, while there are approximately 30,600 total senior living communities in the United States.[4]

15.     A Place For Mom's claim to be a no-cost service for those seeking senior care living options is also false and misleading. When a senior is placed with a contracted community, that community pays A Place For Mom a commission equivalent to the first month's rent and care.[5] These costs are ultimately passed on to the consumer, as the community raises the monthly rent and care expenses to cover the commission.

---

[3] https://www.aplaceformom.com/eldercare-advisors, accessed November 11, 2024.

[4] https://www.ahcancal.org/Assisted-Living/Facts-and-Figures/Pages/default.aspx, accessed November 11, 2024.

[5] https://partnercentral.aplaceformom.com/getting-started, accessed November 11, 2024.

4

16. The U.S. Senate Special Committee on Aging, led by Senator Bob Casey, exposed A Place For Mom's false and deceptive advertising practices in June 2024, accusing A Place For Mom of falsely portraying itself as a comprehensive, no-cost, and unbiased service through its marketing and advertising. *See* June 17, 2024, Letter from Senator Robert P. Casey, Jr. to A Place For Mom's former C.E.O., attached hereto as Exhibit A. The investigation raises concerns about the company's core marketing claims of offering comprehensive, unbiased, and no-cost senior living placement and referral services. *See id.* Senator Casey specifically asserts that, contrary to its marketing claims, A Place For Mom refers families exclusively to contracted communities that pay the company commissions, thereby limiting the available choices to less than half of the assisted living facilities in the United States. *See id.* This business model directly contradicts A Place For Mom's claim of aligning its interests with those of caregivers and families, as well as its claim to be a free service, as communities ultimately pass the cost of the commission along to residents and their families. *See id.* Senator Casey points to evidence, including the company's own materials and expert commentary from a former employee, that A Place For Mom prioritizes financial gain over providing a truly comprehensive or impartial service. *See id.* Senator Casey also raises concerns about the quality of care in some of the communities A Place For Mom recommends, as certain top-rated facilities have been cited for neglect or dangerous conditions, which further undermines the trust families place in the company's referrals. *See id.*

17. These allegations have been substantiated by A Place For Mom's own former Chief Marketing Officer, Robert Grammatica, who cautions consumers about using senior living referral and placement services like A Place For Mom. Offering insight into the underlying scheme, Mr. Grammatica has stated:

> Senior living placement services establish contractual relationships with certain senior living providers. Some represent hundreds or even thousands,

5

but none offer every option. Even the largest online placement service only has relationships with less than one-half of all senior living communities in the U.S.

. . .

Referral services make money by acquiring consumer contact information, establishing a relationship with them, and, ultimately, referring consumers to a contracted provider. They typically receive compensation equivalent to one month's rent after a client they referred successfully moves into a contracted community.

. . .

Many consumers incorrectly assume that online referral services refer communities based on family needs or the best fit. Many advisors online and in your local community are very knowledgeable about provider options—but only those they contract with. As a business, they naturally only present or recommend senior living communities that agree to pay them a commission. Some will even direct you to those offering the greatest financial return or helping residents move in faster than others.

. . .

Many senior referral agencies are well-funded, privately held organizations. As these for-profit services gain greater market share and pricing power – often through aggressive online marketing practices – they raise commission costs. Those higher costs are ultimately passed on to consumers down the line as costs continually increase.[6]

II. **A Place For Mom employs a deceptive scheme based on false and misleading advertising designed to steal potential customers and leads from Birch Gardens and other senior living communities, thereby causing them harm, or potential harm.**

18. The scheme begins when someone searching for senior living options performs a simple online search. Birch Gardens, an independent senior living community, is not contracted with A Place For Mom and does not pay commissions or receive referrals from them. However, when someone searches for "Birch Gardens" on a web search engine like Google—whether

---

[6] https://www.whereyoulivematters.org/resources/senior-placement-services-how-do-they-work/, accessed November 11, 2024.

prompted by word of mouth or Birch Gardens' own marketing efforts—the search results will display not only Birch Gardens' official website, but also a listing for Birch Gardens on A Place For Mom's website. The screenshot below illustrates how a Google search result includes Birch Gardens as it appears on A Place For Mom's landing page:





A Place for Mom
https://www.aplaceformom.com › ... › Virginia › Staunton

**Birch Gardens | Assisted Living | Staunton, VA 24401**

Nov 11, 2021 — There are many open community areas inside and outside, including a gazebo and **gardens**. The property is fenced in and locked, so the residents are very safe.

4.5 ★★★★★ (1) · Price range: $$$

19. A Place For Mom manipulates search engine results to display its own listing for Birch Gardens, intercepting or diverting keyword web searches for "Birch Gardens" to A Place For Mom's website, where it lists Birch Gardens. This listing falsely implies that Birch Gardens is a community option available through A Place For Mom.[7] The page even features a phony 4.5 star rating and review[8] and a fake stock photo of a gazebo, which further substantiates the illusion of affiliation.

20. The screenshot below illustrates what a potential customer would see if he or she then clicked on the Birch Gardens link appearing on A Place For Mom's Google results landing page:

---

[7] Manipulating or leveraging keyword web searches for senior living communities to redirect users to its own website is A Place For Mom's standard practice of steering prospective customer leads away from non-contracted communities. Robert Grammatica, Former Chief Marketing Officer for A Place For Mom, has stated, "Some even buy search keywords with the names of senior living communities to intercept traffic meant for a selected community." https://www.whereyoulivematters.org/resources/senior-placement-services-how-do-they-work/, accessed November 11, 2024.

[8] Former Chief Marketing Officer for A Place For Mom, Robert Grammatica, also says that "Several online referral services offer 'best of' ratings and reviews, but there are no clear standards or performance criteria. Criteria are often based on reviews on their own websites, averaging a rating of 4.5 stars." *Id.*

← Back   Home / Senior Living / Assisted Living / VA / Staunton                                    Prev | Next

**Birch Gardens**                                                                  ⚖ Compare   ♡ Save   ↑ Share

12 Royal Dr, Staunton, VA 24401

1 review **Add review**

For more information about senior living options:  📞 **(866) 652-8987** ⓘ

[ Message ]     [ Download brochure ]     [ Ask advisor ]

Overview   Nearby Communities   Reviews   Neighborhood   FAQs   Amenities

21.     As shown above, when users click the link for Birch Gardens on A Place For Mom's official website, they are redirected to a landing page tailored for Birch Gardens, specifically designed and maintained by A Place For Mom. This page is designed to give the impression that Birch Gardens is part of A Place For Mom's network of senior living options.

22.     Having successfully lured the potential customer or lead to its website, A Place For Mom then uses this opportunity to steer the customer away from Birch Gardens toward one of its contracted communities. For example, if a person seeks more information about Birch Gardens by calling the phone number listed on the page ("866-652-8987"), clicking the "Message," "Ask advisor" or "Download brochure" links, or engaging the live chat, he or she is connected to a representative of A Place For Mom—not Birch Gardens. Because Birch Gardens is not contracted with A Place For Mom, it is not an option as one of A Place For Mom's "recommended" senior living communities. Instead, A Place For Mom directs the inquiry to one of its contracted communities, earning a commission in the process, and excluding Birch Gardens.

23.     Birch Gardens has been proximately damaged by A Place For Mom's wrongful conduct in several ways. By attracting potential customers to its website through false and misleading advertising and then listing Birch Gardens on A Place For Mom's website in the manner described above, A Place For Mom creates the false impression that Birch Gardens is one of its optional communities, even though it is not. This misleads potential customers and ultimately

8

redirects them to other communities, causing Birch Gardens to lose, or potentially lose, prospective customers and leads. In sum, Birch Gardens has suffered injuries or potential injuries to its commercial interests in sales as a proximate result of A Place For Mom's false advertising and deceptive practices.

24. Moreover, listing Birch Gardens on A Place For Mom's website, as outlined above, has damaged, or potentially damaged, the reputation and goodwill of Birch Gardens. The recent Senate investigation into A Place For Mom, coupled with the negative publicity surrounding its deceptive marketing practices, limited community options, substandard care, and financial incentives influencing recommendations, undermines consumer trust. As a result, Birch Gardens and similar communities risk losing customer goodwill and credibility by being ostensibly associated with A Place For Mom.

25. A Place For Mom's false advertising and deceptive practices have also harmed, or potentially harmed, Birch Gardens' business reputation in another way. When A Place For Mom redirects prospective customers seeking information about Birch Gardens through A Place For Mom to one of its contracted communities, as described above, those customers may wrongly assume that A Place For Mom recommends the other community as a better or superior option. This damages Birch Gardens' reputation, especially since A Place For Mom claims to offer unbiased and comprehensive advice.

## CLASS ACTION ALLEGATIONS

26. **Nationwide Class:** Plaintiff brings this action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure on behalf of itself and a nationwide class of similarly situated entities, based on A Place For Mom's violation of the Lanham Act, as follows:

> Every entity in the United States that did not have a contract or any contractual affiliation with A Place For Mom at the time it was listed on A Place For Mom's website or social media platforms.

9

27. **New York Subclass:** Plaintiff also brings this action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure on behalf of itself and a New York subclass of similarly situated entities, based on A Place For Mom's violation of New York's Deceptive Trade Practices Act, as follows:

> Every entity in the State of New York that did not have a contract or any contractual affiliation with A Place For Mom at the time it was listed on A Place For Mom's website or social media platforms.

28. Excluded from the class and subclass are A Place For Mom, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, any person in bankruptcy, and the presiding judge(s) in this case and its staff.

29. Plaintiff reserves the right to expand, limit, modify, or amend these class definitions, including the addition of more subclasses, in connection with its motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

30. **Numerosity**: At this time, Plaintiff does not know the exact size of the class and subclass; however, due to the nature of the trade and commerce involved, Plaintiff believes that the number of class and subclass members is in excess of one hundred and into the thousands, and thus are so numerous that joinder of all members is impractical. The number and identities of class and subclass members is administratively feasible and can be determined through appropriate discovery in the possession of A Place For Mom.

31. **Commonality**: There are questions of law or fact common to the class and subclass, which include but are not limited to the following:

   (a) Whether A Place For Mom's advertisements were false or misleading;

(b) Whether A Place For Mom's advertisements deceived or had the capacity to deceive customers;

(c) Whether A Place For Mom's advertisements violated Section 1125(a)(1)(B) of the Lanham Act;

(d) Whether A Place For Mom's conduct was deceptive in violation of New York's Deceptive Trade Practices Act;

(e) Whether A Place For Mom's false and misleading advertising violated New York's Deceptive Trade Practices Act;

(f) Whether A Place For Mom's deceptive actions and false advertising affected the public interest and harmed or potentially harmed the consumer public;

(g) Whether A Place For Mom's deceptive conduct and false advertising was willful and knowing;

(h) Whether A Place For Mom's wrongful conduct caused harm or potential harm to Plaintiff and the putative class and subclass;

(i) Whether A Place For Mom's wrongful conduct poses the threat of future harm to Plaintiff and the putative class and subclass; and

(j) Whether injunctive relief is appropriate to prevent future harm to Plaintiff and the putative class and subclass;

32. **Typicality**: Like Plaintiff, many other senior living communities who were not contracted with A Place For Mom were listed on its website under the same circumstances. Plaintiff's claims are typical of the claims of the class and subclass because Plaintiff and each class and subclass member were injured by A Place For Mom's false advertising and deceptive conduct. Plaintiff, the class, and subclass have suffered the same or similar injury as a result of A Place For Mom's false advertising and deceptive conduct. Therefore, Plaintiff's claims are typical of the claims of the class and subclass, and class treatment is appropriate.

33. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained competent counsel who is experienced in prosecuting and resolving consumer class

11

actions. Plaintiff will fairly and adequately represent the interests of the class and subclass and does not have any interests adverse to those of the class and subclass.

34.     **Superiority**: The common questions of law and fact enumerated above predominate over questions affecting only individual members of the class and subclass, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the class and subclass will prosecute separate actions is remote because the damages or other financial detriment suffered by individual class and subclass members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against A Place For Mom.

## COUNT I

### FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT
**15 U.S.C. § 1125(a)(1)(B)**
**(also known as Section 43(a)(1)(B))**

35.     Plaintiff alleges this cause of action on behalf of itself and the proposed nationwide class, and in so doing, incorporates all preceding allegations.

36.     A Place For Mom's conduct as alleged herein violates Section 1125(a)(1)(B) of the Lanham Act, which prohibits the use in commerce of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ." 15 U.S.C. § 1125(a)(1)(B).

37.     A Place For Mom advertises that it offers a comprehensive, no-cost, and unbiased placement and referral service for families seeking senior living options, offering unbiased recommendations and advice based on a wide range of options. Additionally, by including non-contracted communities in its website listings, such as Plaintiff and the proposed class, A Place

For Mom creates the misleading impression that these communities are part of its referral and placement network and available as options.

38. These advertisements are false or misleading, as set out above. They are literally false as a factual matter and/or literally true or ambiguous, while implicitly conveying a false impression, misleading in context, or likely deceiving or confusing to consumers.

39. These false and misleading advertisements were made in interstate commerce in connection with commercial advertising or promotion. The misrepresented services affect interstate commerce in that A Place For Mom presented them on the worldwide web and through social media platforms, accessible by consumers nationwide.

40. These false and misleading advertisements are material and deceived or had the capacity to deceive consumers. Moreover, the deception had a material effect on consumers' decisions to use a senior living community. These advertisements deceived consumers by claiming A Place For Mom offered comprehensive, no-cost, and unbiased referral and recommendation services. However, it only refers customers to contracted communities that pay it a commission, excluding non-contracted communities from its recommendations. The contracted community then ultimately passes on these costs to the customer by raising the costs of monthly rent and care. Moreover, customers seeking information about non-contracted communities are misled into believing these communities are recommended by A Place For Mom. In reality, A Place For Mom redirects these inquiries to its contracted communities, securing a commission while excluding non-contracted communities.

41. Plaintiff and the putative class have been and/or are likely to be injured as a proximate result of the false and misleading advertising, in the form of reputational harm and a direct diversion of prospective customers and leads, as previously alleged.

42. Pursuant to 15 U.S.C. § 1117, Plaintiff and putative class members seek an award of A Place For Mom's profits, damages, costs, and attorneys' fees. Plaintiff and putative class members further seek an order enjoining A Place For Mom's false and misleading advertising to prevent future harm to Plaintiff and the putative class.

**COUNT II**

**DECEPTIVE CONDUCT IN VIOLATION OF
NEW YORK'S DECEPTIVE TRADE PRACTICES ACT
N.Y. GEN. BUS. LAW § 349**

43. Plaintiff alleges this cause of action on behalf of itself and the proposed New York subclass, and in so doing, incorporates all preceding allegations.

44. The New York Deceptive Trade Practices Act declares "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . " to be unlawful. N.Y. GEN. BUS. LAW § 349(a).

45. A Place For Mom engaged in deceptive acts and practices in violation of Section 349 by diverting prospective customers and leads, as described above. In sum, A Place For Mom manipulates keyword web searches for Plaintiff and senior living communities in the New York subclass, redirecting users to its own website. There, it lists these communities in a way that falsely suggests they are part of A Place For Mom's network, recommended by the company, and an option to choose from. However, these communities are not part of its network. When customers seek information or make inquiries about Plaintiff or New York subclass members, A Place For Mom reroutes these inquiries to its contracted communities, earning a commission while excluding the non-contracted ones. This deceptive practice misleads customers into believing they are contacting the listed communities, when in fact they are communicating with A Place For Mom representatives.

46. Plaintiff and New York subclass members have been and/or are likely to be injured as a proximate result of these deceptive practices, in the form of reputational harm and a direct diversion of prospective customers and leads, as set out above.

47. A Place For Mom's deceptive actions affect the public interest because they have harmed or potentially harmed the consumer public. Plaintiff and the members of the New York subclass were harmed in exactly the same way as thousands of others as a result of and pursuant to A Place For Mom's generalized course of deception.

48. A Place For Mom's deceptive practices occurred in the conduct of business, trade, or commerce and the furnishing of services in the State of New York.

49. A Place For Mom's deceptive conduct was willful and knowing.

50. A Place For Mom is liable to Plaintiff and the other subclass members for damages in an amount to be proven at trial. Accordingly, Plaintiff and the subclass members seek an award of actual damages and treble damages (for intentional violations) per N.Y. GEN. BUS. LAW § 349(h).

51. Plaintiff and the subclass members also seek an order enjoining A Place For Mom's deceptive practices to prevent future harm, awarding attorneys' fees and expenses, and providing any other just and proper relief available under N.Y. GEN. BUS. LAW § 349(h).

### COUNT III

### FALSE ADVERTISING IN VIOLATION OF NEW YORK'S DECEPTIVE TRADE PRACTICES ACT
**N.Y. GEN. BUS. LAW §§ 350-a and 349**

52. Plaintiff alleges this cause of action on behalf of itself and the proposed New York subclass, and in so doing, incorporates all preceding allegations.

53. A Place For Mom engaged in deceptive trade practices by falsely portraying itself as a comprehensive and unbiased service through its marketing and advertising. More specifically,

15

and as described throughout this Complaint, A Place For Mom advertises that it offers a comprehensive, no-cost, and unbiased referral and placement service for families seeking senior living options, offering unbiased recommendations and advice based on a wide range of options. Additionally, by including non-contracted communities in its listings, such as Plaintiff and the New York subclass, A Place For Mom creates the impression that these communities are part of its referral network and available as options.

54. This is false and misleading advertising under N.Y. GEN. BUS. LAW § 350-a, which defines false advertising as ". . . advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

55. A Place For Mom's actions affect the public interest because they have harmed or potentially harmed the consumer public. Plaintiff and the members of the New York subclass were harmed in exactly the same way as thousands of others as a result of and pursuant to A Place For Mom's generalized course of deception.

56. A Place For Mom's false and misleading advertising occurred in the conduct of business, trade, or commerce and the furnishing of services in the State of New York.

57. A Place For Mom's practices were willful and knowing.

58. As set out above, Plaintiff and the New York subclass members have been and/or are likely to be damaged as a proximate result of A Place For Mom's deceptive and false advertising practices, in the form of reputational harm and a direct diversion of prospective customers and leads.

59. A Place For Mom is liable to Plaintiff and the other subclass members for damages in an amount to be proven at trial. Accordingly, Plaintiff and the subclass members seek an award

of actual damages and treble damages (for intentional violations) per N.Y. GEN. BUS. LAW § 349(h).

60.     Plaintiff and the subclass members also seek an order enjoining A Place For Mom's deceptive practices to prevent future harm, awarding attorneys' fees and expenses, and providing any other just and proper relief available under N.Y. GEN. BUS. LAW § 349(h).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this case be certified and maintained as a class action and for a judgment to be entered upon Defendant as follows:

   A.   certify the class and subclass as proposed herein, designating Plaintiff as class representative, and appointing undersigned counsel as Class Counsel;

   B.   award economic and compensatory damages on behalf of Plaintiff and all class and subclass members;

   C.   award all actual, general, special, incidental, punitive, and consequential damages, including Defendant's profits, to which Plaintiff and class and subclass members are entitled;

   D.   award treble damages pursuant to law, and all other actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff, class, and subclass members are entitled;

   E.   order injunctive relief, compelling Defendant to cease its unlawful actions;

   F.   award reasonable attorneys' fees, reimbursement of all costs for the prosecution of this action, and pre-judgment and post-judgment interest; and

   G.   grant such other and further relief this Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: December 18, 2024

Respectfully submitted,

**KIRBY McINERNEY LLP**

/s/ *David E. Kovel*
David E. Kovel
Lauren Wands
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
Email: dkovel@kmllp.com
lwands@kmllp.com

*Local Counsel for Plaintiff and the Proposed Class and Subclass*

J. Matthew Stephens
Brooke B. Rebarchak
**METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone: (205) 939-0199
Email: mstephens@mtattorneys.com
brebarchak@mtattorneys.com

R. Brent Irby
**IRBY LAW LLC**
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone: (205) 936-8281
Email: brent@irbylaw.net

*Counsel for Plaintiff and the Proposed Class and Subclass*